May it please the Court, Armin Skolmowsky for Petitioner Jan Han. In this case, Your Honor, Petitioner is a 32-year-old man who has suffered persecution in China on account of a critical opinion due to his family's involvement in Falun Gong. After a lengthy hearing for the IJ, the IJ found him not credible, thus denied all relief. It's our position, Your Honor, that substantial evidence does not support this finding by the IJ. Initially, the IJ looked at one incident, the arrest, and there was an issue as to who got the bloody nose. First it was, responded it was the police officer. But that was cleared up. The IJ said he didn't think that was a problem. It might have been an interpretation problem. But then the IJ goes to the other evidence and says that based on the totality of the evidence, I'm left with the impression that Mr. Yan is not providing truthful evidence or testimony. And at this point, Your Honor, I believe, Your Honors, I believe that he, the IJ, speculates. He talks about the departure. He finds it improbable, given the family's resources, that he could collect the $50,000 to leave China, at the same time also paying the $20,000 bail. He also finds it implausible that Mr. Yan could keep all his documents and hospital records and photographs of his The IJ here speculates using extrajudicial knowledge about China and what the Chinese authorities wouldn't do in a situation where they would raid someone's house. He states, the IJ states, that the family would have been surveilled. In this case, Your Honor, I believe that the IJ uses the Department of State reports to argue that, or to find that the government would do a, would proceed in a certain way to raid someone's house or to find someone's evidence. As you know, Your Honors, that goes against the 9-3-3 case law where the IJ cannot use speculative evidence in the Department of State report to find that that's what the police would do in a situation the respondent testified to. Also, they talk about the visa issue. The IJ wonders out loud, how can this individual get a visa to Vietnam and specifically South Africa? First of all, we think that this evidence was not even relevant because the trips to those countries, actually the country South Africa, took place three months prior to the arrest. Let me ask you this. Do you ever think it's proper for an IJ, after listening to all the testimony, can I just say, in light of everything you've testified to, I just can't, it's just not believable. Like, for example, do you think it's ever proper for an IJ to do that? I don't believe it's relevant. If a respondent is credible and he states or he or she states that. Well, the task at hand is for the IJ to determine whether the fellow is credible, the claimant is credible. Right. I think if someone says... So, you know, you generally look at what they, you know, what somebody says and the rules are a little bit different in immigration proceedings because people don't have, have documentary, generally don't have corroborative evidence and whatnot and so it's different rules kind of apply. But there's still some basic things you look at. And I'm just wondering here, just as an example, what's wrong, why is that, why can't an IJ do that or why shouldn't an IJ do that? What prohibits an IJ from doing that? Well, I think, I think this is, if I can use my knowledge, I think this is because of the location of the immigration court. In that area, a lot of cases are smuggled in, smuggled in on the border, border town areas. And they're also afraid that these people have to owe money to people after they get granted asylum. So oftentimes they bring up money as an issue like, do you still owe money? How much did you pay? Did you pay it off? And actually in this case, the IJ asked him, did you, you know, pay it off? And I think he even says it's all paid off. So I think that's an issue that they deal with at some of these border, border town areas where they're afraid that, let's say, the snakeheads would control the client after the proceedings are complete. And that's why I think sometimes money comes up in these proceedings. I don't see that too often in Los Angeles, but I've seen it many times in these proceedings in San Diego, as this was the case in... Let me ask you a follow-up question that I think is tangentially related to what Judge Payne has just asked you. Assume that the testimony that's offered about matters that do not go directly to the heart of the matter, which I think is Ninth Circuit standard, and the person is absolutely lacking of credibility of all these other tangential issues, though they don't go to the heart of the matter. Cannot an immigration judge say because you've been so lacking in credibility on everything else you've testified to, although it doesn't go to the heart of the matter, that I really have to draw the conclusion that I can't accept your credibility at all? Or do you just look at the heart of the matter and just only that and just ignore everything else? I think the Real ID Act addressed that particular concern. But I think for this case law, I think it's the heart of the matter. So you can lie about everything else? I would say yes, Your Honor.  That's the case law. What do you think the heart of the matter is in this particular case? What are the relevant factors? The heart of the matter, Your Honor, would have been the fact that his brother was a member of an illegal organization in China that's considered a cult. And they came to arrest him. They come to his house, and they end up seeing the father, and they see Mr. Gan. And the arrest itself, the incarceration, the three-day incarceration, as well as the, I guess you could say, the beatings that took place, that was the heart of the matter. The fact that he came to the United States and actually began practicing Falun Gong is the heart of the matter. So is your position that the IJ did not address anything dealing specifically with the heart of the matter and making this credibility determination? Absolutely, yes. And nothing else counts, right? Well, I wouldn't say that. But I would say, yes, nothing else counts. But I know that in real life, things do count. But I still think even the things they looked at was all speculative, conjecture, and did not follow the reasoning that this court requests IJs to follow when it comes to credibility determinations. I'm just curious as to where you drew a line here. But take, for example, the money that he obtained. Now, that doesn't go to the heart of the matter, I guess. But what if, in fact, it was absolutely untrue and there was proof positive that he was lying? You tell me that's irrelevant? Well, you'd have to prove that. I think if someone says in court, I think I'm concerned about the relevancy, not the court. The relevancy of it? I would say that whether or not someone lied, there is a case law that says you can lie about anything and still get asylum. Fake documents, fake papers, fake passports, fake names. Are you coming to the border to say, I'm Joe Smith, but you're actually Phil Johnson? You can get asylum. I mean, that's also, I believe, is it the Mays case that talks about that. So I would say, yes, it is. It is irrelevant. It's not the heart of the matter. The heart of the matter was whether or not this person suffered persecution, whether or not he has a well-founded fear of persecution if he were to return to China. And based on those facts, we feel that it's the heart of the matter. There was no adverse credibility determination that the IJ made about those particular issues, right? There is not, actually. Well, the one was the nosebleed, but the IJ said, well, in the end, that's just too minor. You wouldn't even rely on that. Right. And that's the only time he actually focused on the heart of the matter. And he basically states that, well, it's no big deal. He said it was minimal anyway. It's minimal anyway because it could have been a translation mistake. And I think he corrects himself actually at the end where he does say, no, no, I didn't. I did it. It wasn't the police officer. So, OK, you want to save a minute for a rebuttal? Sure, Judge. OK, thank you. So where was their credibility determination about the so-called heart of the matter? Well, I take it that you remember my name from yesterday. So I guess I don't have to. You state your name for this is being recorded. My name is Jesse Bless. I represent the attorney general in this case. We don't waste time with trivial things like that in Brooklyn. I understand. We want to get to the heart of the matter. All right. Let's get to the heart of the matter. Let's do that. The record does not compel the conclusion that Mr. Yarn presented a credible claim. And the matters that go to the heart are that the bloody nose, while deemed minimal, it was taken in context of minimal by itself. But here we have other things. And let me list those for the court. Number two is his release. At one point, his release from his detention. And that certainly is a walk away in a hurry from the heart of the matter. I'm just a visitor here, but I'm just curious. I mean, do you agree or disagree that if the credibility determination does not go to the heart of the matter, it doesn't matter whether or not somebody is credible about other matters? The attorney general's position would be that it's certainly relevant. Credibility in these cases is often critical. And it would go to the burden of proof. Now, the petitioner and asylum applicants have the burden of proof. So let's say someone, they have to meet that burden of proof. And if they don't have. You're walking away from my question a little bit by talking about the burden of proof. I just want to know what's relevant here before we get to the burden of proof. It's absolutely relevant. I mean, every answer. Why is it relevant? Like, let's say the money, for example. What if that was absolutely fictitious? Would that be relevant? And why? Absolutely. It's relevant to determine because his release is so close in time to his detention that in the context, in the totality of the circumstances, I was detained in July. I left three weeks later. My family makes $5,000 a year. I was able to come up with $50,000. It becomes a house of cards that when you take, when you start taking cards away, they all fall apart. It's a mosaic, to use a term that this Court's familiar with. It absolutely, every piece has to fit, especially in this case when his, it's not something that's irrelevant to his asylum claim because how he escapes the persecution, alleged persecution, is absolutely relevant and would always go to the heart of the claim. The heart of the claim is not a pinpoint moment in time with these asylum applications because often the mistreatment occurs and then it's what happens next? How do I get, you know, what happened after that time? So I think the, you know, we say a heart, I think a heart encompasses a lot of detail surrounding the claim. That's why, you know, maybe, you know, they wouldn't call it, you know, I mean, I don't, I don't know, something smaller. It's, it's, it's, it's not a bullseye. It's, it's, you know, it's the whole, you know, I guess, you know. Do you see anything here at all that does not go to the heart of the matter, that's not part of the mosaic, that arguably cannot be considered to be part of detention? To be candid with the court, certainly the detail surrounding his visits to South Africa. Nothing to do with this case, right? It has something to do with his, you know, in terms of how he answered the question could go to his demeanor. If he's pausing and says, you know, and in fact, if you, in the record, his answers are, I went with a bunch of people, I went with three. They were evasive. And certainly when you talk about someone's demeanor and as a trier of fact, only he could observe, hit the person, the applicant's demeanor, certainly details, while not going to the heart of the claim, are relevant to the person's demeanor. Well, the only thing he said about demeanor, I think, was that he hesitated responding to a question or two. Are you telling me whatever the IJ makes a determination in respect to demeanor, that that's the end of the line and that's all we need to look at? Absolutely not. This court is, this court must review the entire record, the record evidence. And I'd like to list for you specific instances where, in the record, that support the immigration judge's decision that he gave evasive, if not multiple answers to the same question. Before you go through that, Liz, when I read, looked at the transcript, and it's not a long transcript, but it looked like there were difficulties in translation. Right. And the immigration judge doesn't give me a great deal of comfort. Just the immigration judge's decision stated that it was not a matter of interpretation that, that, that, that. Yeah, but you look at some of the answers and whatnot. It looks like there's some difficulty in translation. It's, you know, it's always difficult when you get a dry record and you're, you know, I, I'm unsure. I, you know, the government would not be in a position. The immigration judge did say, though, that it was not in his estimation from, from being there, reviewing the asylum applicant on the witness stand, testifying that it was not a matter of interpretation. That, in fact, he did give, through, through interpretation, multiple answers to the same question. Do you know what might, what he could have done, and, and one could conclude that he didn't do, if he just made general, generalized statements about the MENA and problems, weren't they? One second. He's left something in our conference room. I can wait. We'll hold the clock. Yeah. One minute. Unless you want to go ahead. No, we'll wait until you go ahead. He left something on his desk. We have these little roving rooms where we put all our stuff in, so. Since you've got a moment, you can think about this. Yeah. No, that was good. Give it, give us your list. Oftentimes when I come out here, I, I want to call it with a, you know, a 22nd or a full, full, full timeout. And I, I don't always have that opportunity. Well, there's a timeout. Yeah. Now, the thing, the thing that I was about to ask you, and, and, and it seems a little strange to me, there's no doubt that there was some problems with this record. It's not the quote, perfect record. And it could have been due to interpretation. It could have been due to any number of things. But when the IJ talks to us and makes his record, then he can specify rather than talk in generalizations. And when you look at this record to see, do you see that he specified or that he talked in generalities? The immigration judge's decision, his decision is not, it's an oral decision. It's not, it would not be the example by which all immigration judges would go. Yeah, but he knows he's going to be appealed and he knows we're going to look at the record because we have to decide these cases on the record, not on how we might see them. Right. But you do have the benefit of the entire record. And in going to that record, there are certain things where he gave multiple answers to the same question during his testimony. We have the entire record. We can't be found as a fact. So we can look to see what the immigration judge said and we can see if there's something in the record to substantiate what he said. And then that's about it. Let's assume we see any number of reasons that he could have mentioned that would be sufficient to block the entry of a party. But he didn't, he didn't, he didn't mention those at all. So we look at what he mentioned. And when we look at what the IJA mentioned, we see very broad generalizations, don't we? Well, there are a couple of specifics. I mean, the bloody nose, he qualifies it, it would be minimal if not for the other evidence of record. Now, certainly to him, it was not, in fact, at the end of the day, minimal. Regarding his occupation, he states three different occupations that he had. He was a farmer, he worked in a carton factory, he worked in a paper, you know, those, going to his occupation is certainly relevant. There's certain things about, you know, what his brother said. His brother said at one point, my brother's quite safe. When asked again, a follow up question, my brother can never be safe. He's, you know, fallen down or persecuted everywhere. Those are those are specifics. And they certainly would go to his fear of persecution. His detention. My family came and bribed a guard. And another point is that my family came and bailed me out. These are sufficient reasons. There are sufficient reasons if the interpreter understood precisely what he said, but they're consistent. The my family came and bribed a guard and he got out. My family came and bailed me out. Could have bailed me out by bribing the guard. Do you see what I see? But under the deferential standard, this court reviews, you know, reviewing a record in its entirety. It's one thing to say, well, maybe maybe it's a matter of dual interpretation. Maybe it could have been this way. Maybe maybe it could be another IJ could have found this way. But to be compelled under the standard, this court must be compelled. If this court's compelled, it must remand for the for the finder of fact to again. He denied his application just based on lack of credibility. There's no he didn't get no alternative. He didn't get to any of the other. No, there's not. And the attorney general submits that the court should affirm the decision of the immigration judge as affirmed by the Board of Immigration Appeals. Thank you. You're welcome. To give you, you had about a minute for rebuttal. Thank you very much. Briefly, the heart of the matter was only discussed in one instance, and that was the bloody nose. The IJ in his decision basically explains it away himself. And he does not make it into a mosaic. He explains it away. Then he says, however, there were other inconsistencies and implausibilities in the record when he looks at the totality of the circumstances. And that's where he speculates from top to bottom. As to demeanor, case law says that specific references are made to the non-credible aspects of demeanor. He says in his decision, evasiveness by respondent on several occasions. Well, what occasions? We don't even know. That's it. You have to guess. What are the occasions? As to the information, I need to stop here. I'm sorry. It said stop here. That's why. Finish your point. As to the information to his brother, the question was, is he safe? He said he's safe for the moment. Actually, the next question was in regards to, is he safe to live a normal life? He said, no, I can't work. They checked my ID. We can't live properly, even where he lives in the Sichuan province. So he wasn't safe in the sense of being safe. He was still hiding from his hometown, from his family, because he didn't want to be arrested. Okay. Thank you. Time is up. Thank you for your arguments. We appreciate them and we'll submit this matter for decision.
judges: Farris, Paez, Block